UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| TARAN COBB, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No.: |
| | ) |
| AMERICAN INFRASTRUCTURE SERVICES, INC., | ) ) |
| | ) |
|     Defendant. | ) |
| _____ | / |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff TARAN COBB ("Plaintiff" or "Cobb"), files his Complaint against Defendant, AMERICAN INFRASTRUCTURE SERVICES, INC. ("Defendant" or "AIS"), and in support he states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq*. ("FCRA"), to redress Defendant's unlawful employment practices against Plaintiff including Defendant's unlawful discrimination, harassment, and retaliation against Plaintiff because of his race leading to his unlawful termination.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Title VII claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

5. Plaintiff, Cobb is a citizen of the United States, and is and was at all times material, a resident of the State of Florida, residing in Lee County, Florida.

6. Defendant, American Infrastructure Services, Inc., is a Florida For-Profit Corporation with its principal place of business in Fort Myers, Florida.

7. Defendant does business in this judicial district at 11341 Lindbergh Blvd, Fort Myers, Florida 33913.

8. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On February 10, 2020 Plaintiff timely dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on race and retaliation.

11. Plaintiff's EEOC Charge was filed within three hundred days after the alleged unlawful employment practices.

12. On September 14, 2020, the FCHR issued Plaintiff his Notice of Rights as the investigation had been pending for over one hundred and eighty (180) days without a determination.

13. On March 15, 2021 the EEOC issued to Plaintiff his Notice of Right to Sue, upon request.

14. This Complaint was timely filed within one year following Plaintiff's receipt of the FCHR's Notice of Rights and ninety days following Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

15. Plaintiff is African American.

16. Plaintiff was hired by Defendant in May 2019 as a Laborer and was assigned to work under Foreman Frank (last name unknown) (Caucasian).

17. In or around October 2019, Defendant temporarily assigned Plaintiff to work on a different job site under Foreman Gary Stinnett (Caucasian). Mr. Stinnett immediately began subjecting Plaintiff to racially derogatory and hostile conduct.

18. During Plaintiff's assignment under Mr. Stinnett, Mr. Stinnett repeatedly used the N-Word toward Plaintiff and the other African American laborers. For example, Plaintiff and three other African American laborers, Johnny (last name unknown), Jimmy (last name unknown), and George (last name unknown), were digging in a trench and asked Mr. Stinnett for assistance. Mr. Stinnett responded saying he is not a N***** helper. Stunned, Plaintiff and the laborers asked Mr. Stinnett what he said, and Mr. Stinnett repeated the N-word saying he is not a N*****'s runner.

19. Around early December 2019, the project under Mr. Stinnett was complete, and Plaintiff was given a new assignment under his original Foreman, Frank. Frank asked Plaintiff about Mr. Stinnett's racial discrimination because Johnny initiated a complaint. Plaintiff responded by corroborating the discrimination and escalating his concerns regarding Mr. Stinnett's racist remarks. Plaintiff further explained to Defendant that he did not feel safe working around Mr. Stinnett due to his blatant discriminatory animus.

20. Defendant asked Mr. Stinnett about the racial complaint, and Mr. Stinnett admitted to using the N-word toward African American employees; however, Defendant failed to take remedial action.

21. Shortly after Plaintiff's protected escalation and Mr. Stinnett's admitted discriminatory conduct toward Plaintiff, Defendant again assigned Plaintiff to work under Mr. Stinnett. Mr. Stinnett proceeded to discriminate and retaliate against Plaintiff by subjecting Plaintiff to hostile and disparate treatment, including repeatedly calling him a "fucking dumbass" and several other swear words.

22. As a result of Defendant's continued discrimination and failure to take remedial action, Plaintiff obtained legal counsel. Plaintiff's counsel notified Defendant of his representation and re-escalated Plaintiff's concerns of discrimination and retaliation.

23. In retaliation for Plaintiff's protected activity, Defendant involuntarily removed Plaintiff from all job assignments and required Plaintiff to report to the office every day for assignment to a job site for that day only. No one else was required to report to the office in this manner.

24. Then, Defendant willfully attempted to circumvent Plaintiff's legal representation. Head Supervisor, Richard Dardas (Caucasian), took Plaintiff out of work specifically to discuss Plaintiff's claims and asked where Plaintiff was headed with everything. Plaintiff reiterated that he is represented and instructed Defendant

to contact his counsel.  Mr. Dardas told Plaintiff that he would rather deal with Plaintiff than deal with counsel, further demonstrating that Defendant was intentionally attempting to circumvent Plaintiff's legal representation.  Plaintiff again directed Defendant to contact his counsel.

25. Defendant continued to discriminate and retaliate against Plaintiff for his protected activity by issuing Plaintiff a write up for allegedly being on his phone. By contrast, Defendant permitted Plaintiff's Caucasian counterparts to openly be on their phones without reprimand.  Then, Defendant reassigned Plaintiff to work with the only African American Foreman because of his race.

26. Days later, Defendant further demonstrated its discriminatory and retaliatory intent to take adverse action against Plaintiff by preemptively preparing to reprimand Plaintiff for a no call no show before his shift was scheduled to begin.

27. Plaintiff reported the ongoing discrimination in retaliation via email to Human Resources, and Defendant received notice of Plaintiff's EEOC complaint. In response, Defendant retaliated by removing Plaintiff from laborer assignments in the field and instead assigning Plaintiff to only garbage duty at the shop.  None of Plaintiff's counterparts were assigned this demeaning task.  Not only was the new assignment less prestigious, but also, this assignment adversely impacted Plaintiff's pay because he was an hourly employee and received 10 hours less per week working in the shop as compared to working on a job site.

28. Defendant then issued Plaintiff two more write ups.

29. Plaintiff disputed the write ups and refused to sign them as permitted by policy. In response, Defendant sent Plaintiff home and refused to provide Plaintiff an answer regarding his employment status.

30. Days later, Defendant terminated Plaintiff under the pretext of a temporary layoff.

31. This "temporary" layoff proved to be permanent as Defendant hired numerous new employees, including less qualified candidates who lacked prior experience, into the positions previously held by the "temporarily" laid off employees, including Plaintiff, instead of reinstating the laid off employees.

32. Furthermore, Defendant has pattern and practice of racially discriminatory conduct that is severe and pervasive. For example, Supervisor, Bryan (Caucasian), told John Fish and Foreman Tim (Caucasian) that African American laborers are just diggers and directed them to not teach African American laborers any other tasks.

33. Also, Supervisor John Williams (Caucasian), segregated his subordinates on the job site and subjected African American employees to derogatory and belittling comments but did not speak to Caucasian employees in the same demeaning manner.

34. Additionally, Defendant terminated two African American employees for not having valid Driver's Licenses while permitting a Caucasian employee to work for numerous months without a valid Driver's License.

35. Defendant also referred to his Mexican subordinates as "wetbacks and beaners." Unlike when Mr. Stinnett engaged in discrimination against African American employees, Defendant took swift remedial action and terminated Mr. Stinnett based on his conduct toward Hispanic employees – which further demonstrates Defendant's discriminatory animus toward African American employees.

36. Defendant has a history of retaliation against minority employees. For example, Defendant terminated Richard (last name unknown)/(African American) shortly after he provided a witness statement corroborating Mr. Stinnett's discriminatory conduct; terminated Aaron Little (African American) shortly after he reported that Defendant was paying a lesser qualified Caucasian new hire a significantly higher hourly rate than more tenured, more qualified African American employees; and terminated Ronnie (last name unknown)/(African American) as part of the purported layoff shortly after he reported Caucasian Supervisor, Jeff, for swearing at and degrading African American employees.

37. Plaintiff has been damaged by Defendant's illegal conduct.

38. Defendant's conduct was willful, malicious, and done with reckless disregard for Plaintiff's federally protected rights.

39. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

**Count I:**
**Race Based Discrimination in Violation of Title VII**

40. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1- 39 above.

41. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of his race, African American.

42. Defendant is prohibited under Title VII from discriminating against Plaintiff because of his race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

43. Defendant violated Title VII by discharging and discriminating against Plaintiff based on his race.

44. Defendant intentionally discriminated against Plaintiff on the basis of his race.

45. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

46. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count II:
### Retaliation in Violation of Title VII

47. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1- 39 above.

48. Plaintiff engaged in protected activity under Title VII while employed by Defendant.

49. Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity.

50. Defendant's conduct violated Title VII.

51. Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

52. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues

to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

53. Defendant's unlawful conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count III:
## Race Based Discrimination in Violation of the FCRA

54. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1- 39 above.

55. At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of his race, African American.

56. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of his race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

57. Defendant violated the FCRA by discharging and discriminating against Plaintiff based on his race.

58. Defendant intentionally discriminated against Plaintiff on the basis of his race.

59. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

60. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count IV:
## Retaliation in Violation of the FCRA

61. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1- 39 above.

62. Plaintiff engaged in protected activity under the FCRA when he raised concerns about Defendant's discriminatory behavior.

63. Defendant intentionally retaliated against Plaintiff for engaging in protected activity.

64. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as

well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

65. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in the amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert witness fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Zane A. Herman*
Zane A. Herman
Florida Bar No.: 120106
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570 ext. 105
F: (866) 580-7499
Zane.herman@spielbergerlawgroup.com

*Counsel for Plaintiff*